UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/18/2019

------------------------------------------------------------X
JOSHUA CLEVELAND,   :
:
                           Plaintiff,   :
:      18-CV-2080 (VEC)
:
          -against-   :      MEMORANDUM
:      OPINION AND ORDER
LONG ISLAND RAILROAD COMPANY,   :
:
                        Defendant.   :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff Joshua Cleveland sued his former employer, the Long Island Railroad Company ("LIRR"), for violations of the anti-retaliation provision of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109. *See* Compl., Dkt. 1. Defendant moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56. *See* Notice of Mot., Dkt. 14. For the following reasons, Defendant's motion is GRANTED. This case is DISMISSED.

## BACKGROUND

Plaintiff began working for Defendant in 2007 as an electrician. *See* Def.'s 56.1 Stmt. ¶¶ 1, 22; Pl.'s 56.1 Stmt. ¶¶ 1, 22. In April 2014, Plaintiff suffered an on-the-job injury, when a light tower boom swung down and severed the tip of his right ring finger. *See* Def.'s 56.1 Stmt. ¶¶ 3, 23; Pl.'s 56.1 Stmt. ¶¶ 3, 23; Pl.'s Mem. of Law at 3; Pl.'s Dep. at 11. Plaintiff reported the injury to his supervisors the same day. *See* Def.'s 56.1 Stmt. ¶¶ 3, 23; Pl.'s 56.1 Stmt. ¶¶ 3, 23; Pl.'s Dep. at 11. Following the injury, Plaintiff remained employed by Defendant, receiving disabled-accident ("DA") pay. *See* Def.'s 56.1 Stmt. ¶ 5; Pl.'s 56.1 Stmt. ¶ 5.

On March 18, 2015, Plaintiff sued Defendant pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51. *See* Def.'s 56.1 Stmt. ¶¶ 7, 24; Pl.'s 56.1 Stmt. ¶¶ 7, 24.

The case proceeded to a jury trial, which began on May 16, 2016. *See* Def.'s 56.1 Stmt. ¶¶ 9, 28; Pl.'s 56.1 Stmt. ¶¶ 9, 28. Plaintiff testified during the trial. *See* Def.'s 56.1 Stmt. ¶ 11; Pl.'s 56.1 Stmt. ¶ 11. On May 18, 2016, the jury returned a verdict in Plaintiff's favor for $1.5 million in loss of earnings, pain and suffering, and other damages. *See* Def.'s 56.1 Stmt. ¶¶ 9, 13, 28; Pl.'s 56.1 Stmt. ¶¶ 9, 13, 28.[1]

About a month later, Defendant terminated Plaintiff's employment. *See* Def.'s 56.1 Stmt. ¶¶ 15, 40; Pl.'s 56.1 Stmt. ¶¶ 15, 40. Defendant notified Plaintiff of his termination through a letter that stated, "[G]iven the jury verdict rendered in your favor on May 18, 2016, effective immediately, your relationship with the Long Island Rail Road is hereby terminated." Def.'s 56.1 Stmt. ¶ 15; Pl.'s 56.1 Stmt. ¶ 15.

On March 7, 2018, after pursuing administrative remedies, Plaintiff filed the present action. *See* Compl. Plaintiff alleges that Defendant terminated him in retaliation for his filing the FELA lawsuit and for his testifying at trial, in violation of the FRSA's anti-retaliation provision, 49 U.S.C. § 20109.[2] *See id.*

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

---

[1] The FELA lawsuit was captioned *Cleveland v. Long Island Railroad Company*, No. 1:15-cv-02039-KBF (S.D.N.Y.).

[2] After Defendant's motion to dismiss was fully briefed, the Court solicited supplemental briefing from the parties, the United States, and the State of New York on the question whether filing a FELA lawsuit is a protected activity under the FRSA. *See* Order (Mar. 19, 2019), Dkt. 31.

genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To defeat summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Courts "construe the facts in the light most favorable to the non-moving party . . . and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79–80 (2d Cir. 2009)).

## II. The Applicable Law

The FRSA's anti-retaliation provision states, in relevant part, that a railroad carrier "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part" to the employee's having engaged in certain forms of protected activity. 49 U.S.C. § 20109(a); *see also Metro-N. Commuter R.R. Co. v. United States Dep't of Labor*, 886 F.3d 97, 106 (2d Cir. 2018). The forms of protected activity are specifically enumerated in the statute; they include reporting an on-the-job injury, providing information in an investigation relating to railroad safety, testifying against a railroad carrier in an FRSA enforcement proceeding, and so forth. *See* 49 U.S.C. § 20109(a)(1)–(7). A plaintiff may not succeed on an FRSA retaliation claim without showing that he engaged in one of the forms of protected activity listed in the statute.

Claims brought under this statute are subject to the burden-shifting framework set forth in the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21"), 49 U.S.C. § 42121. *See* 49 U.S.C. § 20109(d)(2)(A)(i) (incorporating by reference 49 U.S.C. § 42121). First, the plaintiff must establish a prima facie case of retaliation, by showing that:

"(1) [he] engaged in protected activity as defined in the statute; (2) his employer knew that he had engaged in protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Lockhart v. Long Island R.R. Co.*, 266 F. Supp. 3d 659, 663 (S.D.N.Y. 2017); *see also Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 791 (8th Cir. 2014); *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 447 (2d Cir. 2013); *Hernandez v. Metro-N. Commuter R.R.*, 74 F. Supp. 3d 576, 579 (S.D.N.Y. 2015). If the plaintiff establishes a prima facie case, "the burden shifts to the employer to demonstrate by clear and convincing evidence that [it] would have taken the same personnel action in the absence of the protected activity." *Lockhart*, 266 F. Supp. 3d at 663 (quoting *Conrad v. CSX Transp., Inc.*, 824 F.3d 103, 107 (4th Cir. 2016)).[3]

## III. Defendant's Motion for Summary Judgment Is Granted

Plaintiff alleges that Defendant terminated him in retaliation for his filing and testifying in the 2016 FELA lawsuit. The principal question in this case, therefore, is whether Plaintiff's FELA lawsuit is a protected activity under the FRSA. The Court finds, as a matter of law, that it is not. Defendant's motion for summary judgment is, therefore, granted.

### A. Plaintiff's FELA Lawsuit Is Not a Protected Activity Under the FRSA

Plaintiff relies on three provisions of the FRSA to argue that his acts of filing and testifying in the FELA lawsuit are protected activities: 49 U.S.C. § 20109(a)(1)(C), (a)(3), and (a)(4). *See* Pl.'s Mem. of Law at 8–9; Pl.'s Supp. Mem. of Law at 1–3.

---

[3] This framework is similar to, but distinct from, the more familiar *McDonnell Douglas* standard that governs Title VII claims. *See Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015); *Day v. Staples, Inc.*, 555 F.3d 42, 53 (1st Cir. 2009); *Allen v. Admin. Review Bd.*, 514 F.3d 468, 476 (5th Cir. 2008).

### 1. Section 20109(a)(1)(C)

Plaintiff first argues that the FELA lawsuit is a protected activity pursuant to § 20109(a)(1)(C) of the FRSA. *See* Pl.'s Supp. Mem. of Law at 1–2. That provision prohibits retaliation against any act:

> [T]o provide information . . . in any investigation regarding any conduct which the employee reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to railroad safety or security . . . if the information . . . is provided to or an investigation stemming from the provided information is conducted by . . . a person with supervisory authority over the employee or such other person who has the authority to investigate, discover, or terminate the misconduct.

49 U.S.C. § 20109(a)(1)(C). Plaintiff argues that the FELA lawsuit fits within this provision because it was an "investigation" into a violation of "Federal law" (specifically, a violation of FELA). *Id.*; *see* Pl.'s Supp. Mem. of Law at 2. Plaintiff argues that he engaged in protected activity when he "provide[d] information" in that "investigation" by testifying during the trial; in Plaintiff's view, a trial jury is a body with "the authority to investigate . . . misconduct." 49 U.S.C. § 20109(a)(1)(C); *see* Pl.'s Supp. Mem. of Law at 2.

Plaintiff's argument lacks merit. Putting aside whether a lawsuit can plausibly be called an "investigation," a trial jury is clearly not a "person who has the authority to investigate . . . misconduct." 49 U.S.C. § 20109(a)(1)(C). A trial jury's role is to listen to and evaluate facts adduced by the parties at trial, not to investigate those facts. Indeed, at Plaintiff's FELA trial, the jury was specifically instructed to decide the case "based solely on the evidence . . . received in this trial." Trial Tr. at 29. And trial juries are routinely told not to conduct any independent research or investigation into the facts of a case. *See* Sand, 4 *Modern Federal Jury Instructions: Civil* ¶ 71.02, Instruction 71-15 (2019); *United States v. Martorell*, 81 F. App'x 754, 755 (2d Cir. 2003) (juror was properly removed from a trial panel for conducting outside research into a

case). Plaintiff's argument, therefore, is inconsistent with the plain language of the statute. As a matter of law, neither the FELA lawsuit nor Plaintiff's testimony in the lawsuit were protected under § 20109(a)(1)(C) of the FRSA. *Cf. Kuduk v. BNSF Ry. Co.*, 980 F. Supp. 2d 1092, 1099 (D. Minn. 2013) (a union representative was not a person with "the authority to investigate . . . misconduct" under the FRSA), *aff'd on other grounds*, 768 F.3d 786 (8th Cir. 2014); *Tides v. The Boeing Co.*, 644 F.3d 809, 815 (9th Cir. 2011) (representatives of the news media were not people with "the authority to investigate . . . misconduct" under the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A(a)(1)(C); that statute contains language nearly identical to § 20109(a)(1)(C) of the FRSA).[4]

## 2. Section 20109(a)(3)

Plaintiff also argues that the FELA lawsuit is a protected activity under § 20109(a)(3) of the FRSA. That provision prohibits retaliation for any action done "to file a complaint, or directly cause to be brought a proceeding related to the enforcement of this part or, as applicable to railroad safety or security, chapter 51 or 57 of this title, or to testify in that proceeding." 49 U.S.C. § 20109(a)(3); *see* Pl.'s Supp. Mem. of Law at 2.

At least one court has specifically addressed and rejected the argument that filing a FELA lawsuit is protected activity under this provision of the FRSA. *See Kelley v. Norfolk & S. Ry. Co.*, 80 F. Supp. 2d 587, 591–92 (S.D.W. Va. 1999). Moreover, Plaintiff's argument runs afoul of the plain language of the statute. The phrase "this part" in § 20109(a)(3) refers to Title 49, Subtitle V, Part A of the U.S. Code (codified at 49 U.S.C. §§ 20101–21311). That part sets forth standards for railroad safety, such as requirements for train signal systems, inspections of

---

[4] Plaintiff points to a recent case in which the Eighth Circuit "assume[d] for the sake of analysis" that a FELA lawsuit could be a protected activity under § 20109(a)(1) of the FRSA. *See Foster v. BNSF Ry. Co.*, 866 F.3d 962, 968 (8th Cir. 2017). Because this statement was merely an assumption, not a holding, it does not change this Court's conclusion.

6

locomotives, duty hours of railroad employees, and so forth. *See, e.g.*, 49 U.S.C. §§ 20501–20505, 20701–20703, 21101–21107; *see also id.* § 20101 (stating that the purpose of the first chapter of the part "is to promote safety in every area of railroad operations"). It delegates the enforcement of the standards to the Secretary of Transportation, who is charged conducting investigations into violations, *id.* § 20107(a)(1), and imposing civil penalties, *id.* §§ 20111(a), 20902(a), 21302–21304.

Plaintiff's FELA lawsuit does not fit within § 20109(a)(3), as the lawsuit is not "related to the enforcement of this part" of the FRSA. 49 U.S.C. § 20109(a)(3). FELA allows a railroad employee to sue his employer to recover for an on-the-job injury caused by the employer's negligence. *See* 45 U.S.C. § 51. The employer's liability depends on "the traditional common law elements of negligence: duty, breach, foreseeability, and causation"; liability does not depend on whether the employer violated the safety standards set forth in the FRSA. *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 86–87 (2d Cir. 2006); *see also Williams v. Long Island R.R. Co.*, 196 F.3d 402, 406–07 (2d Cir. 1999). Put differently, a plaintiff in a FELA lawsuit need only show that his employer was negligent in a general sense; he need not show that the negligent conduct also violated a specific FRSA standard. *See Tufariello*, 458 F.3d at 86–87.[5] Inasmuch as a FELA lawsuit does not require evidence of a violation of one of the FRSA's safety standards, the Court is hard-pressed to see how such a lawsuit is "related to the enforcement" of those standards. 49 U.S.C. § 20109(a)(3).

---

[5] In *Tufariello*, for example, the plaintiff sued under FELA to recover for his hearing loss, alleging that his employer had negligently failed to provide him protection from the sounds of locomotive horns. *See* 458 F.3d at 82–83. Even though "[t]he FRSA regulations . . . do not address the circumstances under which railroad employees must be provided hearing protection," the Second Circuit allowed the lawsuit to proceed because the plaintiff had established a prima facie case of negligence. *Id.* at 86.

7

The structure of the FRSA's anti-retaliation statute confirms this conclusion. As discussed, one prong of the statute prohibits retaliation against a person who provides information in an investigation into "a violation of *any* Federal law, rule, or regulation relating to railroad safety or security." 49 U.S.C. § 20109(a)(1) (emphasis added). The provision at issue here, § 20109(a)(3), is more restrictive: it protects the filing of a complaint in a "proceeding" only if the proceeding is "related to the enforcement *of this part* or, as applicable to railroad safety or security, chapter 51 or 57 of this title." *Id.* § 20109(a)(3) (emphasis added). Congress could have, when writing § 20109(a)(3), protected the filing of a complaint that alleges *any* violation of law related to railroad safety, as it did in § 20109(a)(1)—in which case § 20109(a)(3) might plausibly apply to a FELA lawsuit. The fact that Congress chose instead to limit § 20109(a)(3) to a more narrow group of statutes confirms that a FELA lawsuit (or, at least, the FELA lawsuit that Plaintiff filed) is not protected activity under this provision.

Plaintiff has adduced no evidence to support a contrary conclusion. He has pointed to no evidence, for example, that he argued during his FELA trial that Defendant violated an FRSA safety standard and that the violation caused his injury, as opposed to arguing generally that Defendant was negligent. *See* Pl.'s Supp. Mem. of Law 2. It is not even clear from Plaintiff's motion papers that FRSA standards were discussed at all at the FELA trial, as Plaintiff's argument on this point is a single, conclusory sentence. *See id.* Based on the record before this Court, no reasonable juror could find that Plaintiff's FELA lawsuit was a protected activity under § 20109(a)(3) of the FRSA.[6]

---

[6] It is possible that a FELA lawsuit could be a protected activity under § 20109(a)(3) of the FRSA if it alleged liability based on a violation of an FRSA safety standard. Because Plaintiff has adduced no evidence that his lawsuit was such a lawsuit, the Court need not address that possibility.

### 3. Section 20109(a)(4)

Plaintiff also argues that his FELA lawsuit was a protected activity under § 20109(a)(4) of the FRSA. *See* Pl.'s Supp. Mem. of Law at 2–3. That provision prohibits retaliation for any action done "to notify, or attempt to notify, the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness of an employee." 49 U.S.C. § 20109(a)(4). According to the Administrative Review Board ("ARB"), which is charged with enforcing the FRSA's anti-retaliation provision, a FELA lawsuit falls under § 20109(a)(4) only if the lawsuit provides an employer with "more specific notification" about the employee's injury than the employee had previously reported. *See LeDure v. BNSF Ry.*, ARB No. 13-044, 2015 WL 4071574, at *4 (Admin. Rev. Bd. June 2, 2015); *see also BNSF Ry. Co. v. United States Dep't of Labor Admin. Review Bd.*, 867 F.3d 942, 948 (8th Cir. 2017) (applying *LeDure*); *Roop v. Kansas City Southern Ry. Co.*, No. 16-CV-413, 2017 WL 4844832, at *4 (E.D. Okla. Oct. 26, 2017) (same). Section 20109(a)(4) applies, in other words, only if the FELA lawsuit expands the employer's knowledge of the injury beyond the information in the employee's initial report (by, for example, providing new details about the extent, severity, or causes of the injury). *See LeDure*, 2015 WL 4071574, at *4.

The parties agree that the "more specific notification" standard applies to § 20109(a)(4). *See* Pl.'s Mem. of Law at 9; Pl.'s Supp. Mem. of Law at 2–3; Def.'s Mem. of Law at 5; Def.'s Reply Mem. of Law at 2; Def.'s Supp. Mem. of Law at 5. Accordingly, because Plaintiff first reported his injury to Defendant in April 2014, Plaintiff's 2016 FELA lawsuit is a protected activity under § 20109(a)(4) only if the lawsuit provided Defendant with new, previously-unknown details about that injury.[7]

---

[7] Plaintiff's briefs, while confusing, clearly embrace the "more specific notification" standard. His response to Defendant's motion, for example, argued that summary judgment should be denied because "the question of

Plaintiff's opposition to Defendant's motion for summary judgment points to no evidence that his FELA lawsuit provided Defendant with more specific notification of his injury. *See* Pl.'s Mem. of Law at 9; Pl.'s Supp. Mem. of Law at 3. His papers offer no evidence, for example, about the extent to which Defendant was already aware of the injury prior to the time that the FELA litigation commenced, nor do they offer any specifics about any new details that emerged during that litigation. Indeed, Plaintiff's arguments on this point are conclusory, two-sentence paragraphs devoid of citations to the record. *See* Pl.'s Mem. of Law at 9; Pl.'s Supp. Mem. of Law at 3. Based on this evidence, no reasonable juror could find that Plaintiff's FELA lawsuit is a protected activity under § 20109(a)(4) of the FRSA.[8]

---

'more specific notification' is a fact question and therefore it is only proper for a jury to determine." Pl.'s Mem. of Law at 9. And his supplemental briefing argued that the "more specific notification" standard "make[s] sense," Pl.'s Supp. Mem. of Law at 4, and "is entitled to *Chevron* deference," *id.* at 3. Because the parties agree that the "more specific notification" standard applies, the Court need not decide whether that standard is a correct interpretation of the statute. The Court notes, however, that in supplemental briefing, the United States also urged adoption of the "more specific notification" standard. *See* U.S. Stmt. of Interest at 6–8.

[8]  Defendant notes, as part of its affirmative defense (that it would have terminated Plaintiff regardless of the alleged protected activity), that Plaintiff and his doctor testified during the FELA trial that Plaintiff would be medically disqualified from returning to his former position as a railroad electrician. *See* Def.'s Mem. of Law at 2, 6–7 (citing Def.'s 56.1 Stmt. ¶¶ 11–12). Plaintiff, however, does not argue that this testimony provided Defendant with "more specific notification" of his injury. *See* Pl.'s Mem. of Law at 9; Pl.'s Supp. Mem. of Law at 3. Indeed, it is not clear that Defendant was unaware of Plaintiff's medical disqualification prior to the FELA litigation; Plaintiff points to no evidence at all about the extent of Defendant's knowledge prior to the litigation. To the extent that this could have been a viable argument, the Court will not raise it on Plaintiff's behalf. *See Davis v. New York City Hous. Auth.*, 379 F. Supp. 3d 237, 256 (S.D.N.Y. 2019) (courts should "decline[] to construct arguments that [the parties] have not raised themselves"); *Lyn v. Inc. Vill. of Hempstead*, No. 03-CV-5041, 2007 WL 1876502, at *16 n.13 (E.D.N.Y. June 28, 2007) ("Issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . ."), *aff'd*, 308 F. App'x 461 (2d Cir. 2009).

Additionally, to the extent that support for Plaintiff's argument is buried somewhere in the record, the Court is "under no obligation to engage in an exhaustive search of the record" when considering a motion for summary judgment. *Jones v. Goord*, 435 F. Supp. 2d 221, 259 (S.D.N.Y. 2006) (citing *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470–71 (2d Cir. 2002)); *see also* Fed. R. Civ. P. 56(c)(3); *Lee v. Alfonso*, 112 F. App'x 106, 107 (2d Cir. 2004). Rather, to defeat a properly-submitted motion for summary judgment, Plaintiff is required to support his arguments with citations to admissible evidence in the record. *See Kalola v. Int'l Bus. Machines Corp.*, No. 13-CIV-7339, 2017 WL 5495410, at *4 (S.D.N.Y. Jan. 9, 2017); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 86 n.2 (S.D.N.Y. 2012)); *see also* Fed. R. Civ. P. 56(c)(1)(A)–(B).

Other than the three provisions of the FRSA discussed above, Plaintiff offers no basis for concluding that his FELA lawsuit is a protected activity. Because Plaintiff has failed to establish the first element of his prima facie case, summary judgment must be granted to Defendant.

**B.**     **Plaintiff's Other Arguments**

Two of Plaintiff's other arguments merit brief consideration. First, Plaintiff argues that Defendant's conduct—terminating him in retaliation for his filing a FELA action—unfairly forces employees to choose between recovering compensation for their injuries and keeping their jobs. *See* Pl.'s Mem. of Law at 3, 8. Even if this were true, Congress, for better or for worse, did not choose to include within the FRSA's anti-retaliation protections FELA lawsuits (or, at least, the FELA lawsuit that Plaintiff filed). Rather, the FRSA carves out only a few, narrow categories of conduct for this type of protection. *See* 49 U.S.C. § 20109(a)–(c). Consistent with the FRSA's purpose of promoting railroad safety, *see id.* § 20101, these categories focus primarily on reports and investigations of violations of railroad safety standards, not lawsuits intended to compensate employees for on-the-job injuries, *see id.* § 20109(a)–(c).

The FRSA's approach is consistent with that of other anti-retaliation statutes, which protect only a few, narrow, enumerated categories of conduct. In Title VII, for example, a statute that prohibits workplace discrimination, the statute's anti-retaliation provision, 42 U.S.C. § 2000e–3(a), protects only the act of reporting unlawful discrimination; it does not protect reports about unfair or unpleasant workplace treatment generally. *See Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14–15 (2d Cir. 2013); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011); *Risco*, 868 F. Supp. 2d at 110–11. Similarly, in the Sarbanes-Oxley Act of 2002, which strengthened protections against misleading corporate financial reporting, the whistleblower-protection statute, 18 U.S.C.

§ 1514A(a), applies only to reports of fraud or violations of the securities laws; the statute does not extend protection to complaints about untoward corporate conduct or corporate malfeasance more generally. *See Northrop Grumman Sys. Corp. v. United States Dep't of Labor, Admin. Review Bd.*, 927 F.3d 226, 229–30 (4th Cir. 2019); *Wadler v. Bio-Rad Labs., Inc.*, 916 F.3d 1176, 1186 (9th Cir. 2019); *Villanueva v. U.S. Dep't of Labor*, 743 F.3d 103, 108–09 (5th Cir. 2014).

Finally, Plaintiff argues that the FELA lawsuit should count as protected activity because it kept his initial, April 2014 report of his injury "fresh" in the mind of Defendant's key decisionmakers. Pl.'s Supp. Mem. of Law at 4. This appears to be a half-hearted attempt to argue that Plaintiff was terminated in retaliation for his initial April 2014 report of his injury—in other words, that the initial report of the injury, and not the FELA lawsuit, is the protected activity in this case and that the FELA lawsuit is merely evidence of a causal connection between the initial report and the termination. *See id.* This argument is made in a conclusory fashion, without any real explanation; accordingly, the Court need not (and cannot feasibly) consider it. *See Felske v. Hirschmann*, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012); *Lyn*, 2007 WL 1876502, at *16 n.13.

Had this argument been properly raised, it would likely fail. Merely keeping a two-year-old report of an injury "fresh" in an employer's mind is not, without more, sufficient to raise a reasonable inference that the report was a contributing factor in the employer's subsequent actions. Indeed, the case on which Plaintiff's argument relies, *Brucker v. BNSF Ry. Co.*, ARB No. 14-071, 2016 WL 4258212, at *8 (Admin. Rev. Bd. July 29, 2016), relies in turn on another case, *Carter v. BNSF Railway, Co.*, ARB Nos. 14-089, 15-016, 15-022, 2016 WL 4238466 (Admin. Rev. Bd. June 21, 2016), that was reversed by the Eighth Circuit because it relied on a

flawed, arbitrary and capricious theory of causation. *BNSF Ry. Co.*, 867 F.3d at 948; *see also Koziara v. BNSF Ry. Co.*, 840 F.3d 873, 878 (7th Cir. 2016).[9] Further, the lack of temporal proximity between the April 2014 report and the June 2016 termination, and the number of intervening events between these two actions, would likely defeat any reasonable inference of causation. *See Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 331–32 (3d Cir. 2016); *Kuduk*, 768 F.3d at 792; *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 348 (4th Cir. 2014); *Fraser v. Fiduciary Tr. Co. Int'l*, No. 04-CV-6958, 2009 WL 2601389, at *6 (S.D.N.Y. Aug. 25, 2009), *aff'd*, 396 F. App'x 734 (2d Cir. 2010). Nevertheless, because Plaintiff has not adequately developed this argument, the Court need not fully consider it.

## CONCLUSION

For all the foregoing reasons, Defendant's motion for summary judgment is GRANTED. This case is DISMISSED. The Clerk of Court is respectfully directed to terminate all open motions and to CLOSE the case.

**SO ORDERED.**

**Date: September 18, 2019**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**

---

[9] The Eighth Circuit pointed out that the standard of causation for retaliation under the FRSA, while lenient, requires a showing not only that a report of an injury was a "but for" cause of the employer's actions, but also that it was the "proximate cause" of the actions. *BNSF Ry. Co.*, 867 F.3d at 946 n.2. The "proximate cause" standard excludes causes that are "too remote, purely contingent, or indirect" to give rise to liability. *Id.*

13